ELIZABETH H. NICHOLS, RESPONDENT, *v.* ELIAS P. HOWLAND, APPELLANT.

*Deed — description, when it conveys the bed of a brook and when only to the center thereof.*

A deed, containing a description: "Beginning at a stake and stones on the south side of the highway on the line between the said lot No. 15 and lot No. 31, thence on said line across the brook to a stake and stones on the southerly bank of said brook, running south 28° east 56 rods, thence down said brook 62 rods to a stake and stones on said bank, thence north 28° west to a stake and stones,"—where the monuments referred to are placed on the southerly bank of the stream, at or near the edge of the water — has the effect of transferring and conveying all of the bed of the brook, and does not extend simply to the center line thereof. The intention so to do is clearly evinced by the fact that the line runs "across the brook."

APPEAL from a judgment entered upon a verdict recovered September, 1887, at the Delaware Circuit, and entered in the office of the clerk of Delaware county January 17, 1888, and from an order denying a motion made on the minutes for a new trial.

The action was in ejectment to recover certain premises along the southerly side of East brook, in the town of Walton. The contro-

versy was over the location of the northerly line of plaintiff's prop-
erty. The jury found that the line was the thread of the stream or
brook as it was in 1840.

Shortly before the trial the parties entered into a stipulation,
entitled in the action and reading as follows: " It is hereby stipu-
lated that for all the purposes of the trial and determination of this
action that the plaintiff is the owner in fee simple of the eastern
portion of lot No. 15 of the Livingston patent, and entitled to the
possession, as the same was conveyed with other lands to Burr Lyon,
one of plaintiff's grantors, by deed dated December 10, 1840, and
recorded in book 20, at pages 506 and 507. And that the defend-
ant is the owner in fee simple of all that portion of said lot No. 15
which is bounded and described in a deed from Jacob Eells and wife
to Benjamin J. Bassett, one of defendant's grantors, and is entitled to
the possession thereof, said deed bearing date October 9, 1843, and
recorded in book No. 27, at pages 182, etc. Dated June 17, 1887."

The description in the Lyon deed was as follows: " Beginning at
a stake and stones on the westerly corner of said lot No 15; thence
running south thirty-eight degrees east seventy chains and eighty-one
links to a stake and stones; thence north sixty-two degrees east
thirty-four chains and thirty-two links to a stake and stones; thence
north twenty-eight degrees west forty-nine chains and fifty links to
a stake and stones standing on the southerly bank of the brook;
thence down the brook sixty-two rods to a stake and stones on the
said bank; thence north twenty-eight degrees west to the line
between lots Nos. 14 and 15 to a stake and stones; thence on a
direct line to the place of beginning, containing 214 acres, be the
same more or less."

The description in the Bassett deed was as follows: " Beginning
at a stake and stones on the south side of the highway on the line
between the said lot No. 15 and lot No. 31; thence on said line
across the brook to a stake and stones on the southerly bank of said
brook running south twenty-eight degrees east fifty-six rods; thence
down said brook sixty-two rods to a stake and stones on said bank;
thence north twenty-eight degrees west to a stake and stones, near
the aforesaid highway, sixty-four rods; thence north sixty-two
degrees east sixty rods to the place of beginning, containing twenty-
one acres and ninety-six rods, be the same more or less."

The court held that, under the stipulation, the question in dispute was as to the actual location of the line as fixed by the deeds referred to in the stipulation, and charged the jury that, if they found that the monuments mentioned in the deeds were placed on the bank of the stream, at or near the edge of the water, then the description carried the right of the grantee to the center of the stream, as the channel of the stream was located at the time of these grants, 1840 and 1843, and the plaintiff would be entitled to a verdict for the possession of the land to the center of the stream as it ran in 1840 and 1843.

*W. H. Johnson*, for the appellant.

*E. H. Hanford*, for the respondent.

MERWIN, J. :

The court below correctly held that the course of the trial must be guided by the stipulation as to the issue between the parties, although it might operate to modify the pleadings. The line in dispute was the northerly line of the plaintiff or the Burr property, and the southerly line of the defendant or the Bassett property. Both of the deeds referred to in the stipulation describe this line substantially in similar terms: " To a stake and stones standing on the southerly bank of the brook ; thence down the brook sixty-two rods to a stake and stones on the said bank." In the Bassett deed, in order to reach this line, there came a course on the east side of the lot southerly along the line between lots Nos. 15 and 31, " *across the brook.*"

Both properties seem to have been owned originally by one Heath, who, in 1803, gave a deed to one Merrick of the Bassett property, in which the lines on the east and south are described as in the Bassett deed. Then, in 1825, the balance of the property was conveyed. At the trial it was held that if the description in the Bassett deed covered the land which plaintiff sought to recover, then the action could not be maintained. Evidence was given as to the location, in fact, of the stakes and stones referred to in the deed as being on the southerly bank of the creek, it being claimed by the plaintiff that they were near the edge of the water, while it

was claimed by defendant that at the easterly end they were about eighteen feet from the brook and at the westerly end were about twelve. The jury by their verdict found with the plaintiff in this respect.

Assuming, then, that those monuments were placed on the southerly bank of the stream, at or near the edge of the water, did the premises of the defendant, as described in the Bassett deed, include the bed of the stream ? If so, then the theory of the trial was not correct.

In *Luce* v. *Carley* (24 Wend., 451), the description began " at a hard maple tree standing on the east bank of the Onondaga river," and then, after going east and north, proceeded as follows : " Thence west, 50 chains and 10 links, to the east bank of the Onondaga river ; thence north along the Onondaga river to the first mentioned bounds." It was held that the grantee took to the center of the stream. In the *Seneca Nation of Indians* v. *Knight* (23 N. Y., 498), the description began at a post standing on the bank of Lake Erie, at the mouth of Cattaraugus creek, and on the north bank thereof, then, after various courses and distances, it came " to a post standing on the north bank of Cattaraugus creek ; thence down the same and along the several meanders thereof to the place of beginning." It was held that the boundary went to the center of the creek. A similar doctrine was stated by Chancellor WALWORTH in *Child* v. *Starr* (4 Hill, 369), though not necessary to the decision.

In *Kings County Fire Insurance Company* v. *Stevens* (87 N. Y., 287), the description commenced at a point on the southerly side of a road, running thence southerly, and, after various courses and distances, came again " to the road," and thence " along said road to the place of beginning." It was held that the title went only to the southerly side of the highway. Substantially the same thing was held in *Lee* v. *Lee* (27 Hun, 1). A like construction was made in *English* v. *Brennan* (60 N. Y., 609). There the line commenced in the margin of the street, and ran thence along the street. The starting point was held to be controlling, and the line did not go to the center. The cases above cited in 24 Wendell and 23 New York would be quite in point in favor of plaintiff's theory, were it not for the fact that the Bassett deed, which is under consideration, by its terms brings the easterly line across the brook.

That shows an intent to include in the deed the whole of the brook. A fixed and definite monument is placed on the southerly or farther bank to which the line goes. Such a monument, placed to locate the end of a line expressly brought across the brook, cannot be said to be placed there only for the purpose of indicating where the line strikes the stream, as suggested in the earlier cases referred to. It is more analogous to the definite starting points on highways that are held to control in the latter cases, although the intermediate line is made to run along the highway. The expression here, " down the brook to a stake and stones on said bank," indicates that the line follows the course of the stream but continues and terminates on the same bank at a point formally designated and fixed. In all these cases it is a question of interpretation and intent in view of the description in the deed and such surrounding circumstances as may properly appear. (*Mott* v. *Mott*, 68 N. Y., 253.)

I am, therefore, of the opinion that the description in the Bassett deed should be construed as including the bed of the stream, and, if so, the plaintiff cannot, in any event, recover to the center, as his deed is controlled by the deed to Merrick in 1803, upon which the conveyance to Bassett was based. The southerly bank referred to seems to have been of some considerable width, and more or less steep all along the line. It may be that the place of the location, on the bank, of the stakes and stones, may have some bearing on the question whether the deed of 1803 carried the title to high or low-water mark. That matter, however, is not important to be considered now.

It follows that the judgment and order should be reversed and a new trial granted, costs to abide the event.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment and order reversed on the exceptions and a new trial ordered, with costs to abide the event.